UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| S.A.M. PANTAENIUS MONACO a/s/o MY SENSES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON TRANSPORT ENTERPRISES, LLC, *et al.* <br><br> Defendants. | ) ) ) ) ) ) )  C.A. No. 1:25-cv-00140-MRD-PAS ) ) ) ) ) ) |

**DEFENDANT SAVE ON TRANSPORT ENTERPRISES, LLC'S MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO <u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

NOW COMES the Defendant, Save On Transport Enterprises, LLC ("Save On"), by and through its counsel, and respectfully submits its Memorandum in Support of its Partial Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the following Counts of the Second Amended Complaint of Plaintiff S.A.M. Pantaenius Monaco a/s/o My Senses, LLC ("Plaintiff"): Count II, Count III, Count IV, Count V and Count VI.

**I.   INTRODUCTION**

The Plaintiff's Second Amended Complaint ("SAC") includes twenty-three (23) counts against six (6) different defendants. Each count arises out of the alleged destruction of a Vessel while in the early stages of interstate transit. The SAC includes six (6) causes of action against Save On for its association with the alleged facts. Five out of the six counts should be dismissed because federal law preempts most state law claims against freight brokers.

## II.  FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT[1]

The causes of action arise out of the Plaintiff's subrogor's desire to ship a vessel from Portsmouth, Rhode Island, to Alameda, California. (ECF 18 ¶ ¶ 15, 16). Plaintiff's subrogor, My Senses, LLC, hired Save On transport to facilitate the transportation of the Vessel and Save On brokered the shipment to Safe Tow, LLC. (Id. at ¶ ¶ 15, 19). Safe Tow was unable to accommodate the Vessel with its equipment and allegedly re-brokered the load. (Id. at ¶ ¶ 30, 31). The subsequent events are alleged through several alternate theories regarding which parties exactly re-brokered the load, and which carriers subcontracted the load. Ultimately, the vessel was destroyed when it caught fire in the middle of the night, while parked on a little-trafficked side road and unattended by its driver. (Id. at ¶¶ 40, 41).

The most relevant facts to are: that the Shipping Agreement signed by both Plaintiff and Save On designated Save On as a broker (Id. at ¶ 16), that Save On initially brokered the transportation of the Vessel to Safe Tow (Id. at ¶ 19) and the above-mentioned conditions of the destruction of the Vessel. Other facts remain immaterial to this motion. Regardless, for the purposes of this motion Save On does not dispute the statements of facts alleged in Defendants Greentree Transportation Company Inc., and Jones Motor Company Inc.'s Joint Partial Motion to Dismiss, or in Plaintiff's Opposition to said Motion.

## III.  LAW AND ARGUMENT

### a.  Legal Standard under Federal Rule of Civil Procedure 12(b)(6)

Federal courts follow a two-step method to resolve a Fed. R. Civ. P. 12(b)(6) motion. First, a court must "identify and disregard statements in the complaint that merely offer 'legal

---

[1] As required by the applicable standard, Save On assumes the truth of the facts alleged in the SAC for purposes of this motion, but Save On disputes many of the facts alleged in the SAC, and reserves the right to disprove Plaintiff's allegations in the future if doing so becomes necessary. For now, Save On need not disprove Plaintiff's allegations.

conclusions couched as fact." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). The standard does not require robust detail as the statement may be "short and plain," so long as it portrays "fair notice of what the … claim is and the grounds upon which it rests." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d at 12 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007)).

After defining and discarding which factual allegations are conclusory, the court must treat those remaining non-conclusory allegations as true. Id. The following "inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id. at 13.

Regardless of the truth of the facts presented in the SAC, Counts II, III, IV, V and V are preempted by federal law. It follows that the Plaintiff fails to state viable claims in those Counts against Defendant Save On. The Court should dismiss these claims as a matter of law.

    **b.    Plaintiff's Counts II, III, IV, V and VI Against Save On Are Preempted By The Federal Aviation Administration Authorization Act ("FAAAA").**

        1.    The FAAAA Establishes Broad Federal Authority To Uniformly Regulate Interstate Commerce.

In Rowe v. New Hampshire Motor Transport Association et al., the Supreme Court decided that the FAAAA broadly preempts state law claims that regulate motor carriers. The Court affirmed the First Circuit's ruling that 49 U.S.C. § 14501(c)(1) preempted the enforcement of Maine laws that governed the delivery of tobacco. Rowe v. New Hampshire Motor Transp. Ass'n, 552 U.S. 364, 367 (2008). Its overview of the history of the FAAAA is an oft-cited backbone of current jurisprudence as it sets out the procedural history behind the legislation. In brief, Congress signed the Airline Deregulation Act ("ADA") into law in 1978, with the goal of improving airline pricing and service. Id. To ensure that the Act maintained nationwide

uniformity relative to the interstate nature of air travel, the ADA was crafted to include a preemption clause, to prevent states from "enact[ing] or enforce[ing] any law… relating to rates, routes, or services of any carrier." Id. at 368 (quoting Morales v. Transworld Airlines, Inc., 504 U.S. 374 (1992)).

Congress passed similar legislation with the Motor Carrier Act of 1980, and in 1994, passed the Federal Aviation Administration Authorization Act, codified as 49 U.S.C. §14501(c). Rowe, 552 U.S. at 368. The FAAAA was legislated to address "unreasonably burdensome" state governance over "free trade, interstate commerce, and American consumers." Dan's City Used Cars. Inc. v. Pelkey, 569 U.S. 251, 256 (2013) (quoting Columbus v. Ours Garage & Wrecker Service, Inc., 536 U.S. 424, 440 (2002)). The FAAAA states that:

> [A] State… **may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any** motor carrier, or any motor private carrier, **broker**, or freight forwarder **with respect to the transportation of property**.
>
> 49 U.S.C. §14501(c)(1).

Notably, the FAAAA mirrors the language of the ADA with respect to the prevention of State interference "related to a price, route, or service of any motor carrier…with respect to the transportation of property," which would later inform its interpretation in Rowe.

To guide their inquiry into whether the FAAAA preempted state law that would govern the transport, delivery and receipt of tobacco, the Rowe Court looked at an earlier decision, Morales v. Transworld Airlines, Inc., a 1992 case where the Supreme Court was tasked with expounding the meaning of the preemption language in the ADA. Rowe, 552 U.S. at 369. The Rowe Court summarized the Morales decision's conclusion that the "related to" language in the statute meant:

4

> (1) that state enforcement actions having a connection with, or reference to, carrier rates, routes, or services are preempted; (2) that such pre-emption may occur even if a state law's effect on rates, routes, or services is only indirect; (3) that, in respect to pre-emption, it makes no difference whether a state law is consistent or inconsistent with federal regulation; and (4) that pre-emption occurs at least where state laws have a significant impact related to Congress' deregulatory and pre-emption-related objectives.

Rowe, 552 U.S. at 370-71 (quoting Morales v. Transworld Airlines, Inc., 504 U.S. 374, 384-390 (1992) (internal quotation marks omitted)).

Simply put, Morales established a broad precedent for the application of the ADA preemption, to promote a uniform application of federal law with regard to interstate commerce. Rowe, 552 U.S. at 370.

Noting that the preemption language in the FAAAA was identical to that in the ADA, the Court cited its own decision in Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, where it stated that "when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well." (cleaned up) Id. (quoting Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006)).

If the Rowe Court had allowed Maine to apply its own laws to the transportation services relevant to the case, the outcome could "easily lead to a patchwork of state service-determining laws, rules, and regulations, [which would be] inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace." Id. at 373. The adoption of the Morales interpretation to the FAAAA also carried over the 'related to' test, which has been held to be "intentionally expansive" and to "[encompass] those state laws that have a connection to, or reference to, either directly or indirectly, the rates, routes, and services of motor carriers and/or brokers." Fahrenbach v. Green Planet Movers and Perennial

Van Lines, LLC, 682 F.Supp.3d 109, 112 (D. Mass. 2023) (quoting Dan's City Used Cars. Inc. v. Pelkey, 569 U.S. 251, 260 (2013)). [2]

Of note to this Court is the First Circuit's 2014 decision in Massachusetts Delivery Ass'n v. Coakley, where the First Circuit defined the scope of the preemption in relationship to a labor dispute. Massachusetts Delivery Ass'n v. Coakley, 769 F.3d 11, 16 (1st Cir. 2014). Its discussion established that in an analysis of the "related-to" test, courts "must carefully evaluate even generally applicable state laws for an impermissible effect on price, route and service," by "engaging with the real and logical effects" of the law. Id. at 20. The First Circuit's opinion on this was prompted by the knowledge that many state laws can maintain some connection to different aspects of the FAAAA because interstate commerce is ubiquitous to existence in the 21st century. Id. at 18.

      2.      Courts Have Uniformly Held That The FAAAA Preempts Common Law Bailment Claims Against Brokers.

In Ameriswiss Technology, LLC v. Midway Line of Illinois, Inc., a shipper hired a broker to transport its goods between Illinois and New Hampshire. Ameriswiss Technology, LLC v. Midway Line of Illinois, Inc., 888 F.Supp.2d 197, 201 (D.N.H. 2012).[3] The broker contracted with a carrier to move the goods, which were subsequently destroyed when the carrier's tractor-

---

[2] We explain the exclusion of Count I, breach of contract, from this motion. The Supreme Court established that breach of contract claims are excluded from ADA preemption due to the implausibility of the theory that Congress would intend for federal courts to resolve common law contract claims. American Airlines, Inc. v. Wolens, 513 U.S. 219, 232 (1995). Following that decision, the Seventh Circuit noted that while enforcing a breach of contract claim can indeed impact the rates, routes, or services of air carriers, a state is not "enacting or enforcing" a specific law when it does so. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1431 (7th Cir. 1996). Because the Supreme Court has been guided by the ADA in its interpretation of the FAAAA, it follows that breach of contract claims would not qualify for preemption. See Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc., 972 F. Supp. 665, 672 (N.D. Ga. 1997) (holding that following Wolens, breach of contract claims are not preempted by the FAAAA.)

[3] Defendant Save On notes that Plaintiff "readily distinguishes" the present case from Ameriswiss "as [Ameriswiss] predates the First Circuit's holding in both Coakley and Tobin barring the broad rules regarding FAAAA's preemption." (ECF 23 at 10). Defendant notes that since Coakley and Tobin, Ameriswiss has remained a cited case locally and nationally.

6

trailer was in a single-vehicle accident. Id. The shipper and their insurance company filed suit against the broker, including a claim that the broker breached its duty of care as a bailee. Id. The Court ultimately found a claim of breach of bailment was preempted by 49 U.S.C. 14501(c). Id. at 206. The Court determined that the preemption was to be applied based on the "subject matter of the litigation," which in this case was "the destruction of [the plaintiff's] machines while they were being transported from one state to another." Id. Because the subject matter of the claim was sufficiently related to the broker's service with respect to the transportation of property, the preemption was applied. Id.

      Outside of the First Circuit, a breach of bailment claim was also held to be expressly preempted by the FAAAA. Alpine Fresh Inc., v. Jala Trucking Corp. and Super Logistics, LLC, 181 F.Supp.3d 253, 253 (D.N.J. 2016). The plaintiff contracted with Super Logistics, LLC, who subsequently hired Jala Trucking Corp. to transport produce from Texas to Maryland and New Jersey. Id. The produce was supposed to remain at a specific temperature throughout transport but was rejected upon delivery due to a temperature abuse that could be attributed to a truck breakdown and repair that the carrier sustained on route, and the plaintiff sued the broker for breach of bailment *inter alia*. Id. The Court invoked the expressly preemptive language of the statute to determine that the breach of bailment claims would regulate "intrastate services" of the broker, and were related to the "price, route or service," of the broker "with respect to the transportation of property" and should be preempted. Id. at 257.

      i.  *The Court should dismiss Count II because the FAAAA preempts Breach of Bailment Claims.*[4]

The Court should dismiss Count II because the claim is preempted by the FAAAA. The Plaintiff alleges that Save On was acting as a bailee of the Vessel when it was destroyed, and therefore breached its bailment obligations. (ECF 18 ¶¶ 69, 71). The Plaintiff considered Save On to be a broker and Save On identifies itself as a broker (Id. at ¶ 16). Save On's services as a broker comport directly with the definition provided in 49 U.S.C. § 13102(2): it is an LLC that provides for the transportation of property by motor carrier. Id. Its services provide interstate shipping solutions for their customers. (Id. at ¶¶ 14, 15). Save On provides the exact type of service that the FAAAA seeks to regulate. Akin to Ameriswiss and Alpine Fresh, the subject matter of the litigation is the destruction of the Plaintiff's property, and the Court should apply the FAAAA preemption and dismiss this count.

     3.  Courts Have Uniformly Held That The FAAAA Preempts False Advertising Claims And State Consumer Protection Act Claims Against Brokers.

False advertising claims and state consumer protection acts are also preempted by the FAAAA. In Fahrenbach v. Green Planet Movers and Perennial Van Lines, LLC, the plaintiff hired Perennial Van Lines to assist him in moving his belongings from New Mexico to Massachusetts. Compl., Fahrenbach v. Green Planet Movers and Perennial Van Lines, LLC, 1:23-cv-11029-JEK (D. Mass. March 20, 2023) ECF 1 (¶¶ 14, 28). The plaintiff was unaware that Perennial was a broker rather than a moving company or carrier and relied on statements from their website that their services were timely and trustworthy. (Id. at ¶¶ 16, 19, 20) Unbeknownst to the plaintiff, Perennial subcontracted the load to Green Planet Movers and

---

[4] Defendant Save On acknowledges the Plaintiff's claim that "Breach of Bailment obligations [are] similarly responsive to safety concerns respecting motor vehicles and thus falls within the safety regulatory authority of the state." (ECF 23 at 12). Defendant notes the lack of case law provided by Plaintiff to support its position.

8

several of plaintiff's belongings were irreparably damaged in transit (Id. at ¶¶ 44, 45, 80, 81). Noting that "numerous sister circuits" recognize the "broad preemptive effect of the FAAAA," the Court granted the defendant broker's motion to dismiss counts that included violation of the Massachusetts Consumer Protection Act, the Florida False Advertising Statute and claims relating to fraudulent and negligent misrepresentation because they were "based on conduct connected to [their] prices and services…with respect to transportation." Fahrenbach v. Green Planet Movers and Perennial Van Lines, LLC, 682 F.Supp.3d 109, 112 (D. Mass. 2023)

Arsenault v. One Call Logistics, LLC, addressed a claim under a state consumer protection act, the Maine Unfair Trade Practices Act. Arsenault v. One Call Logistics, LLC, 2024 WL 4134845, *1 (D. Me. Sept. 10, 2024). The plaintiff filed suit after contracting with the defendant to transport his newly purchased tiny-home from Pennsylvania to Maine. Id. The home was destroyed in transit and the plaintiff discovered that the carrier lacked proper licensing and insurance, despite being assured by the plaintiff that the carrier would be licensed and insured. Id. at *2. The plaintiff alleged that the defendant broker violated the Maine Unfair Trade Practices Act, which prohibits, among other things, "unfair or deceptive acts or practices in the conduct of any trade or commerce." Id. at *12. The Court determined that despite the lack of references to brokers and carriers in the statute, its application to brokers would impact the due diligence required and would therefore influence the prices and services that brokers provide. Id. at 13. Further, the Court confirmed that the allegations were sufficiently related to the defendant's services "with respect to the transportation of property" and were therefore preempted. Id.

          i.       *The Court should dismiss Count V and Count VI because the FAAAA preempts common law claims for false advertising and state law claims based on consumer protection acts.*

The Court should dismiss Counts V (False Advertising) and VI (Rhode Island Unfair Trade Practice and Consumer Protection Act) because the FAAAA preempts the claims. The Plaintiff alleges that Save On's website provided guarantees and reassurances pertinent to their transportation services, which were alleged to be false when the vessel was destroyed. (ECF 18 at ¶¶ 87-89). They also allege that the manner in which the eventual carrier was selected was fraudulent, confusing and an engagement in unfair trade practices which constitutes a violation of Rhode Island's Unfair Trade Practice and Consumer Protection Act. (Id. at ¶¶ 92-96). The services provided by Save On prompt its protection from these claims by the FAAAA. In attempting to facilitate the shipment of the Vessel from Rhode Island to California, it is obvious that the services provided by Save On are sufficiently related to the transportation of property and fall under the jurisdiction of the FAAAA.

In Fahrenbach, where the plaintiff allegedly relied on similar statements in choosing to hire the defendant, the Court dismissed counts similar to the ones alleged here. Because the claims against Save On are sufficiently "based on conduct connected to their services…with respect to transportation," the Court should dismiss the false advertising claim.

Finally, if the Rhode Island Unfair Trade Practice and Consumer Protection Act was to be applied against Save On, it would undoubtedly impact its interstate operations by requiring a new or different standard of care which would likely increase its operating costs or influence its policies of doing business in Rhode Island. This is the exact type of circumstance that the FAAAA seeks to eliminate, as it would fly in the face of congressional efforts to nationally unify

10

the regulation of interstate commerce relating to the prices, routes and services of brokers. The Court should dismiss Count VI.

        4.        Courts Have Held That The FAAAA Preempts Common Law Negligent Hiring and Selection Claims Against Brokers.

The FAAAA contains a safety exception, whereby 49 U.S.C. § 14501(c)(1) "shall not restrict the safety regulatory authority of a State with respect to motor vehicles…" 49 U.S.C. § 14501(c)(2)(A). The application of this exception has been a controversial topic in recent decisions regarding State law tort claims of negligence against brokers, and a split has emerged between Circuit Courts of Appeals. The First Circuit has yet to decisively comment, and as such, several prominent Circuit Court decisions as well as a decision from the District of Massachusetts are provided to guide this inquiry.

In Ye v. GlobalTranz Enterprises, Inc., a broker was sued for negligent hiring when the carrier it contracted with caused the fatality of the plaintiff's spouse. Ye v. GlobalTranz Enterprises, Inc., 74 F.4th 453, 456 (7th Cir. 2023) (cert. denied). The Circuit Court held that the claim was preempted by the FAAAA. Id. at 464. The Court noted the significance of the safety exception that "broadly disallowed state laws that impede its deregulatory goals, [but] made a specific carveout for laws within a state's 'safety regulatory authority…with respect to motor vehicles,' even though such laws may burden interstate commerce." Id. at 458.

The Seventh Circuit discussed the phrase "with respect to motor vehicles," where it noted that the Supreme Court determined that the phrase "massively limits the scope" of the exception. Id. at 460. (quoting Dan's City Used Cars, 569 U.S. at 261.) The Court concluded that the plaintiff's "negligent hiring claim [was] not 'with respect to motor vehicles,' because the exception requires a direct link between a state's law and motor vehicle safety," and it found "no

11

such direct link between negligent hiring claims against brokers and motor vehicle safety." Ye, at 460.

Ye pointed out that while 49 U.S.C. § 14501(c)(1) provides specifically for "any motor carrier, or any motor private carrier, broker, or freight forwarder," § 14501(c)(2)(A) only refers to "motor vehicles," which are defined by U.S.C. § 13102(14) to be "vehicle[s], machine[s], tractor[s], trailer[s] or semitrailer[s] … used on a highway in transportation." Id. at 460-61. In this view, the Court directed the safety exception to apply only to state laws that *directly* pertain to motor vehicle safety. Id. at 462. The Court's opinion was reinforced by examining the language of other laws under Title 49 and finding a lack of any evidence that Congress intended to connect "broker services and motor vehicles." Id. at 463.

The Eleventh Circuit made a similar holding in a case where a plaintiff made claims of negligence and gross negligence in the selection of a carrier against a broker who it had hired. Aspen American Insurance Co. v. Landstar Ranger, Inc., 65 F.4th 1261, 1265 (11th Cir. 2023). The plaintiff alleged that the defendant neglected to verify the carrier's driver, who ended up stealing the load. Id. In interpreting the phrase "with respect for motor vehicles," the Court agreed with Ye that it "requires a direct connection between the state law and motor vehicles." Id. at 1271. They also reiterated that a broker is defined under Title 49 as "a person ... [who] sells, provides or arranges for, transportation by motor carrier for compensation, who 'may not provide motor vehicle transportation for compensation'" Id. (quoting 49 U.S.C. § 13102(2)). They concluded that "in light of [those definitions] a claim against a broker is necessarily one step removed from a 'motor vehicle,'" and that the negligence claims were preempted by the FAAAA. Aspen American Insurance Co., 65 F.4th at 1272.

12

Alternately, the Ninth Circuit found that the safety exception did apply to a claim of negligent selection. Miller v. C.H. Robinson Worldwide Inc., 976 F.3d 1016, 1020 (9th Cir. 2020) (cert. denied). The plaintiff, not a shipper, sued for negligent selection of an unsafe motor carrier after suffering severe injury when he was struck by a tractor trailer which had been brokered by the defendant. Id. The Court held that this claim had the "requisite 'connection with' motor vehicles because it arose out of a motor vehicle accident," and held that the plaintiff's common law negligence claim was not preempted by the FAAAA. Id.; [see Cox v. Total Quality Logistics, Inc., 142 F.4th 847, 857 (6th Cir. 2025), (petition for cert. filed August 6, 2025 (No. 25-145)) (holding that where a negligent hiring was alleged against broker where carrier's illegal truck and driver caused fatal motor vehicle accident, the exception does not require a "direct connection to motor vehicles," focusing on "the connection between the state law and motor vehicles," and that motor vehicles are critical to broker services).] The Court also postulated that the exception was legislated with the goal of "preserving the States' broad power over safety, a power that includes the ability to regulate conduct…through common-law damages awards." Miller 976 F.3d at 1020. The Court recognized that while negligence claims against freight brokers do not "directly regulate motor vehicles… [they do] promote safety on the road." Id. at 1030.

The safety exception's application to negligent hiring or selection claims against brokers has not been directly addressed by the First Circuit. However, in Skowron v. Robinson, the District of Massachusetts made a related decision. Skowron v. C.H. Robinson Co., 480 F.Supp.3d 316, 320 (D. Mass. 2020) The plaintiff made a negligent selection claim against the defendant broker who initially organized transport of goods that were to originate from the plaintiff's warehouse. Id. at 319 (D. Mass. 2020). The broker engaged carrier services to move the goods,

13

and the plaintiff was injured while operating a forklift inside the carrier's trailer. Id. The Court did not grant the broker's motion to dismiss the negligent hiring claims on the basis of FAAAA preemption. Id. at 320. To determine if the safety exception applied, the Court in a discussion to determine the types of claims that fall under a "state's safety regulatory authority with respect to motor vehicles." Id. at 321. They cited Ours Garage, which established that a law satisfies that authority if it is "'genuinely responsive' to safety concerns respecting motor vehicles." Id. (quoting Ours Garage 536 U.S. at 442.) and concluded that the plaintiff's negligent hiring claim was genuinely responsive to those concerns, because when "applied against transportation brokers, [the law] helps to protect citizens from injuries caused by motor vehicles." Id. at 321

      i.    *The Court should dismiss Count III and Count IV because the FAAAA preempts State Law Claims for Negligence, and the safety exception does not apply.*

The Court should dismiss the Plaintiff's Counts of Negligence and Gross Negligence against the Defendant. Despite the emergence of a circuit split regarding the application of the safety exception to claims involving negligent hiring or unsafe selection, the court should find that the exception should not be applied to the facts at hand. For the safety exception to apply, the claim needs to satisfy two prongs: 1) the common law tort claim is a part of a state's "safety regulatory authority" and 2) the claim is "with respect to motor vehicles." Cox, 142 F.4th at 847.

The split largely derives from the disputed meaning of the term "with respect to motor vehicles." The 7th and 11th Circuits have held that for the exception to apply, the state law governing the claim needs to directly relate to motor vehicle safety. They have further specified that the requisite direct connection is not found between "negligent hiring claims against brokers, and motor vehicle safety." Ye, 74 F.4th at 460. We respectfully urge this court to align with this side of the split and to dismiss Counts III and IV against Save On.

The opposing view amongst the Sixth and Ninth Circuits holds that the activities of brokers are sufficiently related to state laws concerning safety with respect to motor vehicles. Miller, 976 F.3d at 1020. This view developed out of Miller, where a motor vehicle accident resulted in significant personal injury. Id. Where this has been addressed within the First Circuit, the court has held that negligent hiring claims do qualify for the application of the safety exception. Most notably, however, the Skowron decision cited the state's interest in "protecting citizens from injuries caused by motor vehicles." Skowron, 480 F.Supp.3d at 321. Critically, the facts at hand do not include, in any way, allegations or presumptions that citizens of Rhode Island were injured, or at risk of being injured as a result of the Defendant Save On's actions.

Even if the Court finds that the negligent hiring claim sufficiently relates to the state's safety regulatory authority, the Court should find that the second prong of the test, the claim's relationship to motor vehicle safety, is not satisfied. Save On's analysis follows the First Circuit's 2014 decision to limit the scope of the FAAAA preemption in Massachusetts Delivery Association v. Coakley. Coakley, 769 F.3d at 20. Following the Coakley framework, we examine the "real and logical effects" that could follow should the exception be applied. Id. A decision following the Miller view on this matter could contribute to a result that would certainly be antithetical to the purpose of the FAAAA itself. Imposing state common law liability onto brokers for claims arising out of damage to inert freight would significantly impact the services provided by Save On. Not only would a new standard of care be created regarding carrier selection, but Save On would undoubtedly have to make further inquiries regarding the cargo and its contents, prospective routes, and the intention of the carrier's employee to leave the load unattended for any period of time. Not only would this new standard prove unreasonably

burdensome, diverging from a national standard of care for shipping brokers would be undoubtedly disruptive to the interests of interstate commerce.

Whether or not the Court finds a "direct link" between the activities of brokers and motor vehicle safety to be necessary for the safety exception to apply, the facts of this matter require it to conclude that motor vehicle safety is not at issue. Application to these facts would not "promote safety on the road," as predicated by the Ninth Circuit, nor would it relate to the protection of citizens from injuries caused by motor vehicles, as implied by Skowron. The damage to the plaintiff's property did not result from a motor vehicle accident and did not occur during active transit. The present action arises from a fire of unknown origin within the cargo of a parked, unattended tractor trailer. No personal injury occurred, and the fire that destroyed the Vessel did not contribute to unsafe conditions beyond the immediate vicinity of the parked vehicle.

**IV.   CONCLUSION**

For the above reasons, Counts II, III, IV, V and VI against Save On should be dismissed. The FAAAA preemption should be applied to these counts because the totality of the claims included refer to conduct that falls squarely within the language of the statute. Save On's alleged participation in this action is with respect to the transportation of property and is undoubtedly related to their services as a broker. Regulation of these services by common law tort liability would prove disruptive to the interests of interstate commerce, both locally and nationally. Broker activities as they relate to the hiring and selection of carriers do not qualify for the FAAAA's safety exception due to the remote nature of the relationship between brokers and motor vehicle safety.

WHEREFORE, Defendant Save On Transport Enterprises, LLC respectfully requests that this Court dismiss Counts II, III, IV, V and VI of Plaintiff S.A.M. Pantaenius Monaco a/s/o My Senses, LLC's Second Amended Complaint.

Respectfully Submitted,
Defendant,
Save On Transport Enterprises, LLC.
By its Attorney,

Dated: August 14, 2025        /s/ Seth S. Holbrook
                              Seth S. Holbrook
                              RI Bar No. 5677
                              238-240 Lewis Wharf
                              Boston, MA 02110
                              617-428-1151
                              sholbrook@holbrookmurphy.com

## Certificate of Service

I hereby certify that on August 14, 2025, a copy of the foregoing document was filed through the CM/ECF system, and it is available for viewing and downloading from the CM/ECF system such that all appearing counsel have been served with this document by electronic means.

/ s / Seth S. Holbrook
Seth S. Holbrook, RI Bar No. 5677